[Cite as *State v. Neal*, 2017-Ohio-1493.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-06-033 |
| | : | O P I N I O N |
| - vs - | | 4/24/2017 |
| | : | |
| DAVID WILLIAM NEAL, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2015CR00439

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Louis Rubenstein, John D. Hill, Jr., 125 East Court Street, Suite 1000, Cincinnati, Ohio 45202, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, David Neal, appeals his conviction in the Clermont County Court of Common Pleas for gross sexual imposition and sexual imposition. For the reasons detailed below, we affirm.

{¶ 2} The charges stem from allegations made by K.C., who alleged that appellant had rubbed her vagina under her shorts and on top of her underwear with his hand. A few

days later, K.C. confided about the abuse to a friend through social media. The friend eventually informed K.C.'s mother of the allegations, who then alerted authorities.

{¶ 3} On August 6, 2015, appellant was indicted for one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a fourth-degree felony, and one count of R.C. 2907.06(A)(4), a third-degree misdemeanor.

{¶ 4} Appellant pled not guilty to the charges and a jury trial was held in April 2016. At the conclusion of trial, appellant was found guilty. The trial court merged the convictions and proceeded with sentencing on the gross sexual imposition charge and imposed an 18-month prison sentence. Appellant now appeals, raising five assignments of error for review.

{¶ 5} Assignment of Error No. 1:

{¶ 6} DEFENDANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 7} Assignment of Error No. 2:

{¶ 8} THE JUDGMENT OF THE TRIAL COURT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} In his first and second assignments of error, appellant argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We will address both arguments together.

{¶ 10} The concepts of sufficiency of the evidence and weight of the evidence are legally distinct. *State v. Wright*, 12th Dist. Butler No. CA2012-08-152, 2014-Ohio-985, ¶ 10. Nonetheless, as this court has observed, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown

No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 11}  A manifest weight challenge scrutinizes the proclivity of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another.  *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14.  In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 12}  Gross sexual imposition is defined in R.C. 2907.05, which states:

(A)  No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1)  The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

{¶ 13}  In addition, sexual imposition is defined in R.C. 2907.06, which states:

(A)  No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(4)  The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.

{¶ 14}  Based on our review, we find appellant's convictions are both supported by

sufficient evidence and are not against the manifest weight of the evidence. K.C., who was 14 years old at the time of the offense, testified that appellant had sexual contact with her by rubbing her vagina with his hands. K.C. explained that appellant began by tickling and then massaging her feet while they were watching a movie together. Appellant then began massaging K.C. further up her legs and asked her if she was a "good twerker," eventually continuing the massage until he reached her vagina.[1] Appellant then rubbed K.C.'s vagina while asking her if it "felt good." K.C. testified that she was afraid appellant might continue with further abuse if she said anything and stayed silent until she came up with an excuse to check the time and go to bed. Thereafter, K.C. testified that appellant told her not to tell anyone or he would get in trouble. After leaving the room, K.C. stated that she cried herself to sleep and slept on the farthest side of the bed, as she was afraid appellant would come lie with her.

{¶ 15} K.C.'s testimony was further corroborated by the existence of a controlled telephone call between herself and appellant.

> K.C.: Okay. Well um - - well, do you remember what happened Saturday?
>
> Appellant: When?
>
> K.C.: Saturday night when we were watching the movie?
>
> Appellant: Yeah.
>
> K.C.: Well, can you like not do that again? It really made me uncomfortable.
>
> Appellant: Yeah. Yeah. Yeah.
>
> K.C.: Okay. Promise?
>
> Appellant: Yeah

---

1. Twerk Definition, Oxford Dictionary, http://oxforddictionaries.com/us/definition/american_english/twerk (accessed April 13, 2017). ("[To] dance to popular music in a sexually provocative manner involving thrusting hip movements and a low, squatting stance").

{¶ 16} Appellant first challenges his conviction on the basis that the state did not satisfy the "force" element of the gross sexual imposition charge. The Revised Code defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A). "However, the definition of 'force' changes when the victim is a child, accounting for the fact that adults can compel children to submit to sexual conduct by means of psychological coercion or use of authority over the child." *State v. Grant*, 12th Dist. Brown Nos. CA2014-03-005 and CA2014-03-006, 2015-Ohio-723, ¶ 20.

{¶ 17} This court has specifically recognized that "force" "need not be overt and physically brutal, but can be subtle and psychological." *State v. Rankin*, 12th Dist. Clinton No. CA2004-06-015, 2005-Ohio-6165, ¶ 47. A child's will can be overcome by fear and duress when an important figure of authority tells the child to do something, and commands the child not to tell anyone about it. *State v. Dehner*, 12th Dist. Clermont No. CA2012-12-090, 2013-Ohio-3576, ¶ 19. When the state proves that the child's will was overcome by fear or duress, the element of force is established. *Id.*

{¶ 18} We find that appellant's argument with respect to the "force" requirement is without merit. K.C. testified that appellant touched her vagina for five to ten minutes, placing her in fear because of their relationship. K.C. explained that she was afraid to speak while appellant was touching her because he might have tried to go further. K.C. also testified that after appellant stopped touching her he told her not to report what he had done. There was also evidence that appellant exercised authority over K.C. and would discipline her. In short, we find appellant's conviction for gross sexual imposition was both supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶ 19} Next, appellant argues that the state did not present any corroborating evidence to support his conviction for sexual imposition under R.C. 2907.06(B). However, we disagree with appellant's argument. This court has previously acknowledged that the

corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. *State v. Seelenbinder*, 12th Dist. Warren No. CA2012-07-062, 2013-Ohio-337, ¶ 13. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory. *Id.* Once the threshold of sufficient corroborative evidence was crossed, it was up to the factfinder to determine whether there was proof beyond a reasonable doubt to support the sexual imposition charges. *Id.*

{¶ 20} In the present case, in addition to the K.C.'s testimony, the state presented evidence that K.C. had told her friend about the abuse, who in turn informed K.C.'s mother. In addition, the state presented evidence from a controlled phone call between K.C. and appellant where, in referencing the incident the prior Saturday night, K.C. told appellant that his actions had made her uncomfortable and asked him never to do that again, to which appellant responded "Yeah. Yeah. Yeah." Accordingly, we find R.C. 2907.06(B) is satisfied.

{¶ 21} In conclusion, we find the state presented sufficient evidence to sustain appellant's convictions and the jury's verdict was not against the manifest weight of the evidence. Acting as trier of fact, the jury was in the best position to resolve factual questions and evaluate witness credibility. Accordingly, we find appellant's first and second assignments of error are without merit and hereby overruled.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE PROSECUTING ATTORNEY COMMITTED MISCONDUCT BY PRESENTING IMPROPER ARGTUMENT [sic] TO THE JURY DURING CLOSING ARGUMENT.

{¶ 24} In his third assignment of error, appellant alleges the state committed prosecutorial misconduct. We do not find any merit to appellant's argument.

{¶ 25} The state is entitled to a certain degree of latitude in making its concluding

remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. A court will find prosecutorial misconduct only when the remarks made during closing were improper and those improper remarks prejudicially affected substantial rights of the defendant. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial remarks. *Layne* at ¶ 60.

{¶ 26} Appellant never objected to any of these issues during trial and thus he has waived all except plain error. *State v. Cotton*, 12th Dist. Butler No. CA2003-06-159, 2004-Ohio-4409, ¶ 19. Under a plain error analysis, a reviewing court will not reverse a conviction based on a trial court's instruction "unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Dougherty*, 12th Dist. Preble No. CA2013-12-014, 2014-Ohio-4760, ¶ 54.

{¶ 27} Appellant first raises error with the state's reference to "unrefuted" evidence. During the state's initial closing, the prosecutor twice mentioned that the K.C.'s testimony was "unrefuted." We note that appellant is correct that the testimony was not "unrefuted," as he vigorously denied the allegations during an interview with detectives. While we agree that a prosecutor must avoid misstating evidence at trial, we fail to find that the prosecutor's statements were "gross misstatements" as appellant suggests. Nor do we find that such statements constituted "improper vouching." Moreover, appellant's trial counsel directly addressed the "unrefuted" remarks in his own closing argument:

> So the State's elusion [sic] - - eluding [sic] to the fact that [K.C.'s] testimony, which we heard here Tuesday for a brief period of time, and then we saw again on the Mayerson Center interview,

which was taken shortly thereafter, is unrefuted.

While this is not evidence, closing arguments, it's our opportunity to argue the evidence. And I - - I - - that is simply not true. You heard the statement from [appellant]. "I did not do it. She's a troubled young girl. I didn't do it." Repeated denials even when pressed by Investigator Haught. "I'm taking clothing. We're going to do DNA. Are we going to find her DNA on her underwear? If it's there and you touched her, we will." "No." It's refuted. It did not happen. He denied it, denied it, denied it.

{¶ 28} We cannot conclude that the statement made by the prosecutor that the evidence was "unrefuted" amounted to prosecutorial misconduct. As noted above, appellant's trial counsel took full opportunity to expound on the state's argument and present his own counterarguments. There is simply nothing to suggest that the outcome of the trial would have been different had this "unrefuted" statement not been made. Nor can we conclude that the "unrefuted" comment relates to appellant's failure to testify. The state is permitted, during closing, to comment on the failure of the defense to present evidence in support of its case. *State v. Myers*, 12th Dist. Fayette No. CA2005-12-035, 2007-Ohio-915, ¶ 25. In sum, we find no error in the state's comment, and therefore no plain error.

{¶ 29} Next, appellant argues that the prosecutor improperly vouched for the credibility by stating that appellant's trial counsel had "engaged in victim blaming" and by inviting the jury to sympathize with K.C.. The relevant portion of the state's argument includes:

When [K.C.] testified here two days ago, ask yourself. Did she sound like a normal teenage girl? * * * Today, you're going to be asked to determine [K.C.'s] truthfulness.

Remind yourself, she never wavered in her account of what happened. She never said, he touched me in the bedroom, he touched me in the kitchen, he touched me in the car when we were alone. She never said his fingers went inside my vagina. Sure, some of the details are in a different order, so what. That doesn't matter. Remember, when we talked in voir dire about forgetting some of the details of important events and remembering facts differently?

This happened some time ago. It happened about 10 months ago, and this is a 14-year-old girl. The significant facts of that horrific evening never changed. It happened on the couch. He massaged my feet. He rubbed up my legs. He went under my shorts. He rubbed my private over my underwear. It lasted 5 to 10 minutes. Asked if it felt good. Asked to twerk. Told her not to tell anybody, because he would get in trouble.

[Appellant's trial counsel] engaged in victim blaming. She made all of this up. She made all of this up because – let's see. * * * She was bored. And she wanted to wear short-shorts, * * *. She didn't make this up. It took courage. It took courage for her to stand up here in front of 14 people she doesn't know and talk about a sexual encounter with [appellant].

Ask yourself, what did she gain from this? The answer should be, absolutely nothing. What did she lose? She told her herself. * * * It wasn't her choice. It was his choice. He made the despicable choice to touch [K.C.] inappropriately on that night. [Appellant's trial counsel] wants you to believe that reasonable doubt is an impossible high standard that the state can't meet. Reasonable doubt is not an impossibly high standard. Reasonable doubt is based on reason and common sense. Reasonable doubt is right here. You all know what it is.

And if you still have a doubt about what happened that evening * * * I want you to watch the Mayerson video again. Watch it closely. Watch her description of how he rubbed her privates. It specifically at 14:20, her description is very graphic. After you watch that again, you won't have any doubt that this happened. And as I said when we first met, your vote counts here.

Make your vote count today, and find the Defendant guilty. Find him guilty of breaching the trust that [K.C.] placed in him. Find him guilty of making her no longer feel safe, and find him guilty of gross sexual imposition and sexual imposition. Thank you.

{¶ 30} We initially note, contrary to appellant's suggestion, that referring to K.C. as the victim was not improper and did not amount to improper vouching as there was evidence that K.C., in fact, was the victim. The prosecutor's statement regarding K.C. is merely a recitation of the position that the state took throughout the case. Simply, referring to the "victim," as opposed to the "alleged victim," or something similar, does not amount to prosecutorial misconduct or unfairly prejudice appellant.

{¶ 31} With respect to the statement that the jury should "make your vote count," we agree that it is preferable not to use such language in closing argument, but we do not find it amounts to prosecutorial misconduct. *State v. Morgan*, 2014-Ohio-2472 at ¶ 51 ("[f]or a prosecutor's closing argument to be prejudicial, the remarks must be so inflammatory as to render the jury's decision a product solely of passion and prejudice"). When the prosecutor's comments are reviewed in their entirety, and in appropriate context, we cannot say that such statements would inflame the jury to deprive appellant of a fair trial. The statements by the prosecutor merely addressed appellant's argument that K.C. had conjured this story to avoid visitation. By addressing appellant's theory of the case, the state was commenting on the appropriate burden of proof and focusing the jury's attention on the credibility of the parties and their respective positions.

{¶ 32} In conclusion, we have reviewed the entirety of the record and do not find any instances of prosecutorial misconduct during the closing arguments. The state's position was a direct response to counter appellant's claims that K.C. had fabricated the allegations for personal reasons. Moreover, even if we had found certain remarks improper, they do not rise to the level of plain error since the outcome of the trial would not have clearly been different absent the allegedly improper remarks. *State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544, ¶ 43. Accordingly, appellant's third assignment of error is overruled.

{¶ 33} Assignment of Error No. 4:

{¶ 34} DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶ 35} In his fourth assignment of error, appellant argues that his trial counsel was ineffective for failing to object during closing arguments, again referencing the same alleged instances of prosecutorial misconduct that he contests in his third assignment of error. We disagree.

{¶ 36} To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Failure of one prong of the *Strickland* test is fatal to any claim of ineffective assistance of counsel. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49.

{¶ 37} As addressed above, the statements made during closing argument were not prosecutorial misconduct and his trial counsel was not deficient. Moreover, appellant fails to show any prejudice. The issues were properly presented to the jury and largely rested on the credibility of K.C., whose credibility was corroborated by other evidence, including the controlled phone call, which highly suggested that appellant knew exactly what conduct had occurred that night with a corresponding promise that it would not occur in the future. Appellant has not shown that the outcome of the trial would have been different had his trial counsel made such objections. Accordingly, appellant's fourth assignment of error is overruled.

{¶ 38} Assignment of Error No. 5:

{¶ 39} THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING THE VIDEO OF THE FORENSIC INTERVIEW OF [K.C.]

{¶ 40} In his fifth assignment of error, appellant argues that the trial court erred by permitting the state to introduce the forensic interview between K.C. and a social worker. Appellant contends that the statements made during the interview do not fall under the "medical treatment" exception to hearsay under Evid.R. 803(4) and the statements were highly prejudicial to his case.

{¶ 41} Evid.R. 803(4) provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or

sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible in court as exceptions to the hearsay rule. "A fundamental assumption underlying the medical-treatment exception is that this particular hearsay is reliable." *State v. Wagers*, 12th Dist. Preble No. CA2009-06-018, 2010-Ohio-2311, ¶ 51. A child's statements made to a social worker regarding sexual abuse she experienced are admissible under Evid.R. 803(4) when made for the purposes of medical diagnosis or treatment. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 39.

{¶ 42} The record indicates that the interview between K.C. and the social worker was done for purposes of diagnosis or treatment and thus satisfies the medical treatment exception under Evid.R. 803(4).[2] The conversation between K.C. and the social worker involved the progression of appellant's conduct, initially tickling K.C.'s feet, and then working his way up to rubbing her vagina for five to ten minutes. The conversation focused on how K.C. was touched and how the abuse affected K.C., both physically and emotionally. While the social worker did not refer K.C. for additional mental health treatment, nor did K.C. seek additional treatment, such facts do not otherwise change the nature of the conversation of whether the statements were made for purposes of medical diagnosis. Based on our review of the record, we find K.C.'s statements to the social work were for the purposes of medical diagnosis and there was no error in admitting the forensic interview. Appellant's fifth assignment of error is overruled.

{¶ 43} Assignment of Error No. 6:

{¶ 44} THE CUMULATIVE EFFECT OF THE PRECEDING ERRORS DENIED

---

2. We also note that K.C. testified and was subject to cross-examination and, therefore, the admission of the interview in the present case does not violate the confrontation clause. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 48.

DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.

{¶ 45} In his sixth assignment of error, appellant argues that he received an unfair trial based on the number of alleged errors during the course of the proceeding and therefore he is entitled to a new trial. We find appellant's argument to be meritless.

{¶ 46} According to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. McClurkin*, 12th Dist. Butler No. CA2007-03-071, 2010-Ohio-1938, ¶ 105. However, because we have found that no errors occurred during appellant's trial, we find that appellant was not deprived of a fair trial, and the cumulative error doctrine is inapplicable. Appellant's sixth assignment of error is overruled.

{¶ 47} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.