[Cite as *State v. Workman*, 2017-Ohio-8638.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2016-12-082 |
| Plaintiff-Appellee, | : | CA2016-12-083 |
| | : | O P I N I O N |
| - vs - | | 11/20/2017 |
| | : | |
| MICHAEL S. WORKMAN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016 CR 0102

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Michael Workman, appeals his conviction and sentence in the Clermont County Court of Common Pleas for multiple sexual offenses. For the reasons detailed below, we affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

{¶ 2} This is a consolidated case involving two victims of Workman's sexual abuse. The first case involved allegations of sexual abuse committed against R.C., a 13-year-old

friend of Workman's stepson. Following the disclosure of this incident, another victim, E.Z., came forward with allegations that Workman had repeatedly sexually abused him for nearly a decade.

{¶ 3} Workman was indicted on February 11, 2016 for two counts of rape in violation of R.C. 2907.02 and two counts of gross sexual imposition in violation of R.C. 2907.05 for the sexual abuse committed against R.C. Thereafter, on March 24, 2016, Workman was indicted for the sexual abuse committed against E.Z. The indictment listed 17 counts. Counts 1-6 were for rapes occurring in Hamilton County between 1999 and 2000.[1] Counts 7-8 were for drug offenses between May 1, 2007 and September 1, 2007 where Workman had allegedly provided E.Z. with drugs to sedate him. Counts 9-10 were rape charges during the same May 1, 2007 to September 1, 2007 time frame alleging that Workman used drugs to sedate E.Z. in order to facilitate sexual abuse. Counts 11-17 were for rapes occurring in Clermont County between 2006 and 2008.

{¶ 4} The trial court granted the state's motion to consolidate the two cases and the matter was tried to a jury.

### R.C.

{¶ 5} R.C. testified that on November 15, 2015, he was in Workman's bedroom playing video games with Workman's stepson. Workman was also in the bedroom playing a computer video game. R.C. stated that at some point he became tired and fell asleep on Workman's bed.

{¶ 6} When he awoke, R.C. stated that Workman was performing oral sex on him. Though he fell asleep fully clothed, R.C. testified that his pants and underwear had been pulled down and Workman's mouth was on his penis. R.C. stated that Workman stopped

---

1. E.Z. was under the age of 13 for Counts 1-6. For Counts 7-11, the state sought to prove that the sexual conduct occurred by force or threat of force.

performing oral sex on him when he awoke and began moving. R.C. explained that Workman let go of him and shifted to make it look like he was playing his video game. R.C. then left the room.

{¶ 7} R.C.'s family testified that R.C. returned home distraught. R.C.'s grandmother testified that R.C. came home, sat in a rocking chair, acted very nervous, and pulled his sweatshirt over his head while sobbing. R.C. did not initially disclose what had occurred, but when asked whether someone had hurt him, he responded "it's worse than that." R.C. continued to cry, but would not disclose the abuse. R.C. stated only that it was "disgusting."

{¶ 8} The family was eventually able to persuade R.C. to disclose the abuse to his aunt. After the disclosure, R.C. was taken to the hospital where a rape kit examination was performed and R.C. was interviewed by social workers at Cincinnati Children's Hospital. DNA analysis revealed the presence of amylase, an enzyme found in saliva, on R.C.'s underwear. Further analysis revealed that Workman could not be excluded as a source for the DNA and that only one in nearly 50,000 people would match the DNA found in R.C.'s underwear. Additionally, the swab taken from R.C.'s penis revealed the presence of amylase and Workman could not be excluded as a source. Only one in 90,000 individuals would match the DNA found on R.C.'s penis.

**E.Z.**

{¶ 9} Following the evidence of abuse pertaining to R.C., the state shifted its case to the abuse committed against E.Z.

{¶ 10} The state presented evidence that Workman had a familial relationship with the victim's family. Workman lived with the victim at three separate residences: (1) a residence in Hamilton County, Ohio between 1999-2000, (2) a residence in Florida between

2000-2006, and (3) a residence in Clermont County from 2006 onward.[2]

{¶ 11}   E.Z. testified about the first instance of sexual abuse occurring in Hamilton County and several incidents that occurred prior to the family moving to Florida.  The sexual abuse continued throughout the time they resided in Florida and when they returned to Ohio in 2006.  At trial, E.Z. recounted various incidents of sexual abuse occurring in Clermont County, including incidents in which Workman used controlled substances in the commission of the abuse.  The sexual activity stopped in 2008 when E.Z. forcefully ended the abuse and threatened to report him.

**Verdict**

{¶ 12}   Prior to deliberation, the trial court granted a Crim.R. 29 motion for Counts 7 and 8 of the indictment in E.Z.'s case for corrupting another with drugs.  Following deliberations, the jury found Workman guilty of all four Counts against R.C. and the remaining 15 Counts against E.Z.  The trial court merged all four Counts involving R.C. and ordered Workman to serve an 11-year prison term for that Count of rape.  The 15 rape Counts involving E.Z. were not merged and the trial court ordered ten years for each conviction.  All sentences were ordered consecutively for a total stated prison term of 161 years.  Workman now appeals the decision of the trial court, raising five assignments of error for review.  For ease of discussion, Workman's assignments of error will be addressed out of order.

{¶ 13}   Assignment of Error No. 1:

{¶ 14}   THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.

---

2. These was some confusion as to the precise dates when the family moved to Florida.

**{¶ 15}** Assignment of Error No. 2:

**{¶ 16}** THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 17}** Workman's first and second assignments of error relate to Counts 3, 6, 10, 13, 15, and 16. Each Count was for rape against E.Z. Workman argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We will address each argument below.

**{¶ 18}** Rape is defined in R.C. 2907.02, which provides:

(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(a) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

**{¶ 19}** Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or

- 5 -

offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion pursuant to the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5.

{¶ 20} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22. In other words, the test for sufficiency requires a determination as to whether the state has met its burden of production at trial. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34.

{¶ 21} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 34. In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Sess*, 12th Dist. Butler No. CA2015-06-117, 2016-Ohio-5560, ¶ 13.

{¶ 22} Although the concepts of sufficiency of the evidence and weight of the evidence are legally distinct, as this court has observed, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of

sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 23} As previously noted, E.Z. testified about the sexual abuse he suffered at the hands of Workman. E.Z. testified that the sexual abuse began when Workman performed oral sex on him when he was six or seven years old in his bedroom at the Hamilton County residence. E.Z. described the sexual abuse as occurring frequently.

{¶ 24} After a while, but while E.Z. was still six or seven years old, Workman began performing anal sex on E.Z. The typical instance of sexual abuse was explained by E.Z.:

> Q. How – how many times, you know, when you're 6 or 7 years old, how often did – did that type of conduct take place?
>
> A. It was mostly every time after he finished anything orally on me.
>
> Q. So would he do something oral on you first?
>
> A. Yes.
>
> Q. Did he say anything to you after that type of conduct?
>
> A. After the – after the unwarranted anal sex?
>
> Q. I guess he would perform oral sex on you?
>
> A. Yes.
>
> Q. And then perform anal sex on you?
>
> A. Yes, he would – he would tell me to roll over and – and yes.
>
> Q. Do you remember where, or do you recall even when the first time that happened?
>
> A. I believe I was in his – well, I mean, at the time it would have been him and my mom's bedroom, but – but it was in the bedroom when we still lived on Roe Street. And – and he had, I mean, he was trying to get me to fall asleep. And I mean, I – I couldn't, because you know, as a kid I wanted to do other things. And – and then that's when he just – he – he was trying to

convince me that what he was doing for me, I needed to give him something in return. And that's when he would perform the anal sex.

Q. You said it hurt?

A. Very much so.

Q. Did you cry?

A. Yes, many times.

{¶ 25} Though the victim stated that the abuse occurred constantly over the period of nearly a decade, there were specific instances of abuse that triggered E.Z.'s memory. The state sought to prove the following instances of sexual abuse:

| Count | Charge | Date of Offense | Sex Act | Triggering Memory |
|---|---|---|---|---|
| 1 | Rape | 1999 | Oral Sex | The first time Workman sexually abused E.Z. Workman performed oral sex on E.Z. in E.Z.'s bedroom at the Hamilton County residence. |
| 2 | Rape | 1999 | Anal Sex | The first time Workman had anal sex with E.Z., which occurred in Workman's bedroom at the Hamilton County residence. |
| 3 | Rape | 1999 | Anal Sex | The state alleged Count 3 as representative of the number of times the sexual abuse took place at the Hamilton County residence. |
| 4 | Rape | March 2000 | Anal Sex | Workman had anal sex with E.Z., which caused rectal bleeding. E.Z. went to see a doctor following this incident. |
| 5 | Rape | 2000 | Anal Sex | Workman promised E.Z. that he would be allowed to play video games in exchange for anal sex. |
| 6 | Rape | 2000 | Anal Sex | Workman had anal sex with E.Z. in the bathroom at the Hamilton County residence. |
| 7 | Dismissed | | | |
| 8 | Dismissed | | | |
| 9 | Rape | Between May 1, 2007 and September 1, 2007 | Anal Sex | First of two charges where Workman allegedly sedated E.Z. with prescription medication and engaged in anal sex. |
| 10 | Rape | Between May 1, 2007 and | Anal Sex | Second of two charges where Workman allegedly sedated E.Z. with |

| | | September 1, 2007 | | prescription medication and engaged in anal sex. |
|---|---|---|---|---|
| 11 | Rape | 2006 | Anal Sex | Workman had anal sex with E.Z. in a vacant apartment underneath the Clermont County residence. |
| 12 | Rape | 2006 | Oral Sex | Workman was performing oral sex on E.Z., but was interrupted when a family member unexpectedly arrived home early. |
| 13 | Rape | 2006 | Anal Sex | The State alleged Count 13 as representative of the number of times the sexual abuse took place at the Clermont County residence. |
| 14 | Rape | 2007 | Anal Sex | This event was referred to as the "Reese's cup incident." E.Z. defied Workman in front of his siblings and Workman had anal sex with him as punishment. |
| 15 | Rape | 2007 | Anal Sex | The state alleged that Workman had anal sex with E.Z. after forcing him to watch gay pornography. |
| 16 | Rape | 2007 | Anal Sex | The state alleged that Workman had anal sex with E.Z. while E.Z. was reading a comic book in his closet at the Clermont County residence. |
| 17 | Rape | 2008 | Anal Sex | The final time that Workman had anal sex with E.Z. |

{¶ 26} The state was largely methodical in how it addressed each instance of sexual abuse moving from the earliest instance of sexual abuse to the next until E.Z. described the final instance of sexual abuse. However, as addressed in more detail below, the state appears to have inadvertently skipped over one instance set forth in the indictment and bill of particulars.

{¶ 27} Following a thorough review of the evidence, we find the state presented sufficient evidence to sustain the majority of Workman's convictions and those convictions were not against the manifest weight of the evidence. However, we agree that one offense was not proven with any degree of specificity and must be vacated.

**Counts 3, 6, 10, 13, and 16 are affirmed**

{¶ 28} For the following Counts, we find the state's evidence is supported by the manifest weight of the evidence and therefore are also sustained by sufficient evidence.

**Count 6**

{¶ 29} Count 6 involved an allegation that Workman had anal sex with E.Z. in the bathroom of the Hamilton County residence in 2000. The state began by asking E.Z. if anal sex had occurred in different areas of the house. E.Z. replied in the affirmative and stated that it had occurred in his room a few times, in the living room a few times, and in his brother's room. The state then inquired if anything had happened in the bathroom, to which E.Z. responded affirmatively. E.Z. testified that it was following this bathroom incident that Workman had told him that the entire situation was his fault, that E.Z. had started it, and that E.Z. had asked him to "do those things."

{¶ 30} Workman argues that Count 6 is based on insufficient evidence because "E.Z. never described any sexual conduct occurring in the bathroom." Because E.Z. failed to elaborate, Workman contends that "[w]e shall never know" what exactly occurred in the bathroom. Workman suggests that perhaps a third party might have attempted to use the bathroom, thereby disrupting the act.

{¶ 31} When taken into appropriate context, however, the record reveals that Workman's Count 6 conviction was based on sufficient evidence and was not against the manifest weight of the evidence. In this case, the state was focused on identifying prior instances of anal sex and where that activity occurred in the Hamilton County residence. E.Z. affirmed that "something" happened with Workman in the bathroom and went on to explain that it was following this incident that Workman began blaming the victim and asserting that the victim asked him to "do those things." Previously, the victim had also testified that Workman had tried to blame him as the reason why the sexual abuse occurred.

**{¶ 32}** Following review, we find the jury could well have inferred that the "something" that occurred in the bathroom was anal sex, which would be appropriate given the context of the testimony. As a result, we find Workman's conviction for Count 6 involving anal sex occurring in the Hamilton County residence was not against the manifest weight of the evidence.

## Count 10

**{¶ 33}** Counts 9 and 10 involve instances in which Workman used a sedative to facilitate two separate instances of sexual abuse. Workman does not challenge Count 9 in this assignment of error. As to Count 10, the state presented the following testimony:

> Q. And now [E.Z.], were there ever any times where the Defendant gave you any substance –
>
> A. Yes.
>
> Q. – to kind of do some of these acts?
>
> A. Yes. There were two specific times that I could remember that I know of. And honestly, I mean, thinking back on it there may have been times that he could have put it in my food, because I just * * *. There were two times that he did. There was one time that he gave it to me, and then later that night I fell asleep. It was for – it was because I – I said something about feeling sick or something like that, or I had a headache, and he gave that to me. And then I woke up and he was on top of me, again performing anal sex on me. And I tried to roll over to push him off of me, but because of the medication I was too weak to do so. And then there was another time that he kept telling me to take it, so then I wouldn't remember what happened during. And again, this was when I was older. So then I wouldn't be able to, I guess, fight back as much. But I was still under mental manipulation to not actually tell him no and mean it.

**{¶ 34}** Reviewing E.Z.'s testimony shows that E.Z. was referring to two specific instances of sexual abuse: (1) a time when Workman gave E.Z. a drug, E.Z. fell asleep, and E.Z. woke up to Workman having anal sex with him, and (2) a time when Workman made E.Z. take a drug to forget the incident.

**{¶ 35}** After review, we find Count 10 is supported by sufficient testimony and is not against the manifest weight of the evidence. Here, E.Z. testified about a specific scenario wherein Workman had given him drugs in the context of describing anal sex. We believe that a jury could properly infer that Workman had engaged in anal sex with E.Z. after an incident in which Workman kept insisting that E.Z. take medication "so then I wouldn't remember what happened during." The jury did not clearly lose its way in finding that Workman completed a sex act on E.Z. with the use of a drug. As a result, we find Workman's conviction for Count 10 is supported by sufficient evidence and is not against the manifest weight of the evidence.

**Count 16**

**{¶ 36}** Count 16 of the indictment involved an incident where Workman allegedly performed oral sex on E.Z. in a closet while E.Z. was reading a comic book. E.Z. testified:

> * * * I went into the closet, because that's where I normally kept them all, and I just sat in there with the light on, and quietly read my comic books to myself. And there was this one night that [Workman] came in there, and he – he went to perform oral sex while – on me while I was reading my – my comic book.

**{¶ 37}** Workman cites this language in his brief, focusing specifically on the victim's testimony that Workman "went to perform oral sex." Workman argues that the usage of the term "went to perform" implies that Workman did not complete the sex act, but merely attempted to do so.

**{¶ 38}** However, again, we find Workman's argument is without merit. Workman's Count 16 conviction for rape is supported by sufficient evidence and is not against the manifest weight of the evidence. Here, E.Z. testified at length about Workman's sexual abuse, including that Workman repeatedly performed oral sex on him. In this instance, E.Z. was reading a comic book in his closet when Workman "went to perform oral sex." Though E.Z. testified through the perspective of the event unfolding, it would be reasonable for the

jury to conclude that Workman completed the sex act. As a result, we find there was sufficient evidence from which a jury could infer that sexual conduct had occurred. Therefore, Count 16 is supported by sufficient evidence and his conviction is not against the manifest weight of the evidence.

**Counts 3 and 13**

{¶ 39} We now address Counts 3 and 13. Though the state elicited the victim's testimony as to "triggering events" to prove the majority of the offenses, there were some offenses that the state attempted to prove based on the frequency of which the sexual abuse occurred. Counts 3 and 13 were two such instances of general conduct pursued by the state based on the alleged frequency of sexual abuse.

{¶ 40} Workman argues that his convictions on Counts 3 and 13 are not supported by sufficient evidence because E.Z. did not present any detail of specificity on those counts. However, it is well established that, "[a] precise time and date of an alleged offense are not ordinarily essential elements." *State v. Blankenburg*, 12th Dist. Butler No. CA2010-03-063, 2012-Ohio-1289, ¶ 43. In sexual abuse cases involving children, it may be impossible to provide a specific date. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130, CA2013-07-113, 2014-Ohio-3449, ¶ 36. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases." *Id.*

{¶ 41} In *State v. Hemphill*, 8th Dist. Cuyahoga No. 85431, 2005-Ohio-3726, the Eighth District Court of Appeals reversed some of the defendant's convictions for rape where the victim merely testified to numerical estimates of the sexual conduct and provided no testimony connected to "individual, distinguishable incidents." *Id.* at ¶ 88. In that case, the only testimony elicited as to several counts was through a numerical estimate:

Q. Do you – can you tell us as to whether or not he had vaginal sex with you, intercourse with you, on at least 33 times?

A. Yes.

Q. Would he – did he touch your breasts at least 33 times?

A. Yes.

*Id.* at ¶ 11-14. Relying on a case from the Sixth Circuit Court of Appeals, the Eight District held that the state had failed to adequately differentiate these counts and, with three exceptions, failed to subject each count to individual proof. *Id.* at ¶ 88, ¶ 112.

{¶ 42} In contrast, this court decided *State v. Morgan*, 12th Dist. Brown Nos. CA2009-07-029 and CA2009-08-033, 2010-Ohio-1720, in which we found sufficient evidence to support multiple rape convictions.

{¶ 43} In *Morgan*, the victim testified that the defendant began engaging in sexual conduct with her when she was five years old. *Id.* at ¶ 4. The defendant would play "guess the candy game" with her, where defendant would blindfold the victim and place his penis inside her mouth. The victim testified that this conduct occurred "twice a week" while the family lived in Residence 1. *Id.* When the family moved to Residence 2, the victim testified that the defendant began to have vaginal sex with her. *Id.* at ¶ 5. According to the victim, the defendant had "come in my room when I was sleeping, my mom was gone and stuck his penis in my vagina and do what he wanted to do." *Id.* at ¶ 23. The victim testified that the rape would last for approximately five minutes and occurred "mainly five times a week." *Id.* The victim testified that the intercourse became less frequent after the defendant was injured by a ladder. *Id.* Once the family moved to Residence 3, the conduct occurred "maybe like twice a week." *Id.* When the family moved to Residence 4, the victim stated that the defendant would put his penis in her vagina "three to four times a week." *Id.*

{¶ 44} In considering the victim's testimony, this court found that the victim "placed

the repeated instances of abuse in context of her age, her year in school, and the homes in which she resided." *Id.* at ¶ 24. Therefore, the victim's testimony was not merely general, ambiguous claims of abuse as in *Hemphill*.

**{¶ 45}** We find clear contrasts between the ambiguous, indistinguishable testimony in *Hemphill* and the case at bar. In the present case, the victim testified of repeated instances of sexual abuse, including oral and anal sex. By his estimations, E.Z. noted that the abuse occurred "once or twice" a week while living in Hamilton County. E.Z. stated that Workman had anal sex with him at the Hamilton County residence multiple times in his room, multiple times in the living room, as well as other instances in the living room and his brother's room. E.Z. stated that the only place he hadn't been anally abused in the Hamilton County residence was in the kitchen and the hallway.

**{¶ 46}** Aside from the separate acts testified to in Counts 1 and 2, the state charged Workman with one additional count of rape for Count 3. All of those Counts were alleged to have occurred in 1999 while E.Z. lived in the Hamilton County residence. Based on the frequency of abuse, it would be nearly impossible for E.Z. to remember specific details about every single rape that occurred given that this conduct occurred innumerable times over a span of nearly a decade. When the state is faced with a victim of continual sexual abuse who does not have a distinct memory of details associated with numerous occasions, it is within the confines of due process to permit the state to charge the accused with at least one criminal offense for a specific time period. *See Vunda*, 2014-Ohio-3449 ¶ 35-45.

**{¶ 47}** This matter is unlike *Hemphill* where the only testimony was a numerical estimate based on mere general, ambiguous claims of abuse. As to Count 3, E.Z. recalled the frequency of the abuse, his age, multiple locations where the abuse occurred, and distinct memories of abuse.

**{¶ 48}** Similarly, Count 13 involved a separate charge of anal rape that occurred in

2006 while the family lived in the Clermont County residence. Though E.Z. gave specific testimony as to Count 12, which also occurred in 2006, E.Z. did not attach any specific memory to any other instance of anal sex occurring in 2006. However, because of the frequency of abuse, Count 13 was representative of an additional count of anal rape, which occurred in addition to the specific memory attached to Count 12. Again, E.Z. testified that Workman had anal sex multiple times per year at the Clermont County residence, which is in addition to the specific memories recalled in his testimony.

{¶ 49} While more general in nature, Counts 3 and 13 were supported by distinct testimony from the other counts alleged in 1999 and 2006. Like the victim in *Morgan*, E.Z. placed the repeated instances of abuse in context within a specified time frame and the homes in which he resided. In so doing, E.Z. recounted numerous accounts of sexual abuse and locations where the abuse occurred. E.Z.'s testimony was not merely general, ambiguous claims of abuse. Accordingly, we find Counts 3 and 13 were supported by sufficient evidence and were not against the manifest weight of the evidence.

**Count 15**

{¶ 50} We find Count 15 must be vacated because there was insufficient evidence to support Workman's conviction for the offense charged. Count 15 relates to an instance of sexual abuse in which Workman allegedly showed E.Z. gay pornography prior to engaging in anal sex.

{¶ 51} Though maintaining that there was ample evidence to demonstrate additional counts of rape, the state concedes that there wasn't any evidence of anal rape occurring in conjunction with the viewing of gay pornography.

{¶ 52} The only references to the gay pornography incident occurred during an explanatory sidebar in which the state explained that Count 15 involved an incident where Workman engaged in anal sex with E.Z. while forcing him to watch gay pornography. The

state also referenced the "gay pornography" count in its closing argument. However, in reviewing the testimony, there is no reference to an incident where Workman engaged in anal sex with E.Z. while forcing him to watch gay pornography.

{¶ 53} In its questioning of E.Z. with respect to the sexual abuse, the state was largely methodical in following the indictment and eliciting the victim's testimony as to each triggering event. However, it appears the state mistakenly jumped from Count 14 to Count 16 without eliciting any testimony as to the alleged episode of sexual abuse involving the gay pornography. Because there was no evidence as to Count 15, his conviction was not supported by sufficient evidence.

{¶ 54} Based on our review of Workman's assignment of error, we conclude that his argument is sustained in part, and overruled in part. Workman's conviction and sentence for rape in Count 15 is based on insufficient evidence and must be vacated. The remaining counts that Workman challenges in this assignment of error are without merit and hereby overruled.

{¶ 55} Assignment of Error No. 4:

{¶ 56} THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL AS VENUE ON COUNTS 1-6 HAD NOT BEEN ESTABLISHED BEYOND A REASONABLE DOUBT.

{¶ 57} In his fourth assignment of error, Workman argues that the trial court should have granted his Crim.R. 29 motion with respect to Counts 1 through 6 because the offenses occurred in Hamilton County and therefore venue in Clermont County was improper. We find no merit to Workman's argument.

{¶ 58} "Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Meridy*, 12th Dist. Clermont. No. CA2003-11-091, 2005-Ohio-241, ¶ 12. The importance of venue is to give the defendant the right to be tried in the

- 17 -

vicinity of his alleged criminal activity. *Meridy* at ¶ 12. The standard to establish venue is whether appellant has a "significant nexus" with the county where the trial was held. *Id.* at ¶ 22; *State v. Stone*, 12th Dist. Warren No. CA2007-11-132, 2008-Ohio-5671, ¶ 16. As a result, and pursuant to R.C. 2901.12, Ohio's venue statute, "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A).

{¶ 59} We find Workman's argument is without merit. Although Workman is correct that venue lies in any jurisdiction in which the offense or any element of the offense was committed, Ohio's venue statute, R.C. 2901.12, further provides that when an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element of one of those offenses. R.C. 2901.12(A), (H).

{¶ 60} The state proved a continuing course of conduct involving the sex offenses committed against E.Z. The state demonstrated in Counts 9 through 17 that Workman sexually abused E.Z. from 2006 until 2008 in Clermont County. The state also proved that this pattern of abuse had occurred continuously since 1999 when E.Z. was living with Workman in Hamilton County. As a result, we find that venue was appropriate in Clermont County for all offenses. Workman's fourth assignment of error is without merit and hereby overruled.

{¶ 61} Assignment of Error No. 5:

{¶ 62} THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL AS THE ELEMENT OF FORCE TO COUNTS 9-17 HAD NOT BEEN ESTABLISHED BEYOND A REASONABLE DOUBT.

{¶ 63} In his fifth assignment of error, Workman argues that the state failed to prove the element of force related to Counts 9 through 17 for rape. We disagree.

{¶ 64} Pursuant to R.C. 2907.02(A)(2), "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 65} The Revised Code defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A). "However, the definition of 'force' changes when the victim is a child, accounting for the fact that adults can compel children to submit to sexual conduct by means of psychological coercion or use of authority over the child." *State v. Grant*, 12th Dist. Brown Nos. CA2014-03-005 and CA2014-03-006, 2015-Ohio-723, ¶ 20.

{¶ 66} This court has specifically recognized that "force" "need not be overt and physically brutal, but can be subtle and psychological." *State v. Rankin*, 12th Dist. Clinton No. CA2004-06-015, 2005-Ohio-6165, ¶ 47. A child's will can be overcome by fear and duress when an important authority figure tells the child to do something, and commands the child not to tell anyone about it. *State v. Dehner*, 12th Dist. Clermont No. CA2012-12-090, 2013-Ohio-3576, ¶ 19. When the state proves that the child's will was overcome by fear or duress, the element of force is established. *State v. Neal*, 12th Dist. Clermont No. CA2016-06-033, 2017-Ohio-1493, ¶ 17.

{¶ 67} We find that Workman's argument with regard to the "force" requirement is without merit. The state presented ample evidence of force, as it showed that E.Z.'s will had been overcome by fear and duress. Workman was an authority figure in the residence and E.Z. was subject to his control. As described by E.Z., Workman maintained an emotionally abusive relationship with the family, often threatening to break up the family, and engaging in lengthy tirades with the family.

{¶ 68} E.Z. testified that Workman would threaten him if he refused to engage in sexual activities. These threats included breaking up the family, throwing E.Z.'s mother from

the residence, and physical threats. E.Z. stated that Workman threatened to hurt him if he ever told anyone about the abuse. In addition, E.Z. testified that even after the sexual abuse stopped, he still refrained from telling anyone out of concern for what Workman would do to his family. E.Z. explained that the reason he finally came forward with the abuse allegations was because he learned that Workman had been arrested for another sex crime.

{¶ 69} Based on our review, we find there was ample evidence to meet the definition of "force." The evidence presented shows a disturbing use of physical and psychological harm that was employed continuously over the years. As such, Workman's argument to the contrary is without merit and his fifth assignment of error is overruled.

{¶ 70} Assignment of Error No. 3:

{¶ 71} THE TRIAL COURT ERRED IN GRANTING THE STATE OF OHIO'S MOTION TO CONSOLIDATE THE TWO INDICTMENTS.

{¶ 72} In his third assignment of error, Workman argues that the trial court error by permitting the joinder of unrelated offenses. We find no merit to Workman's argument.

{¶ 73} The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character. *State v. Wilkins*, 12th Dist. Clinton No. CA2007-03-007, 2008-Ohio-2739, ¶ 13. Under Crim.R. 13, a "trial court may order two or more indictments or information or both to be tried together, if the offenses * * * could have been joined in a single indictment or information." *Id.* "However, a defendant is allowed, under Crim.R. 14, to move to sever offenses that have otherwise been properly joined where it appears that joinder would be prejudicial." *State v. Rose*, 12th Dist. Butler No. CA2011-11-214, 2012-Ohio-5607, ¶ 12.

{¶ 74} The decision to grant or deny a motion to sever is a matter in the trial court's discretion, and therefore, we review the trial court's decision under an abuse of discretion standard. *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 35.

- 20 -

"An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *Rose* at ¶ 11.

{¶ 75} To prevail on a claim that the trial court erred in denying a motion to sever, the appellant must affirmatively demonstrate: "(1) his rights were prejudiced, (2) he provided the trial court with sufficient information enabling it to weigh the consideration favoring joinder against the defendant's right to a fair trial, and (3) the trial court abused its discretion in refusing to separate the charges for trial." *Id.* at ¶ 13; *Matthews* at ¶ 37.

{¶ 76} "The state may negate a claim of prejudice in one of two ways." *Rose* at ¶ 14. "The first is through the 'other acts' test, where the 'state must demonstrate it could have introduced evidence of the joined offenses at separate trials, pursuant to the 'other acts' provision of Evid.R. 404(B).'" *Id.*, citing *State v. Lott*, 51 Ohio St.3d 160, 163 (1990). "Alternatively, under the 'joinder test' the state can refute a claim of prejudice by showing 'that evidence of each crime joined at trial is simple and direct.'" *Id.*, citing *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 79. If the state can establish that the evidence is "simple and direct," then there is no need to meet the more strict "other acts" test. *Id.* In other words, a demonstration by the state "that the evidence relating to each crime is simple and direct negates any claims of prejudice and renders joinder proper." *Moshos* at ¶ 80.

{¶ 77} In this case, the trial court determined that the evidence relative to each count of the indictment was simple and direct and that Workman failed to meet his burden of demonstrating that joinder of these counts is prejudicial. We find no abuse of discretion in the trial court's determination.

{¶ 78} "Ohio appellate courts have upheld joinder in sex abuse cases involving multiple child victims where the evidence as to each offense is separate, uncomplicated and sufficient to support a conviction without necessitating the use of evidence relating to other

offenses." *State v. Ashcraft*, 12th Dist. Butler No. CA2008-12-305, 2009-Ohio-5281, ¶ 19; *Matthews*, 2013-Ohio-3482 at ¶ 40.

{¶ 79} The record demonstrates that during its opening statement, the state presented an organized overview of the facts as to each offense and each victim. The state then presented its case involving R.C. Following the conclusion of the evidence on those counts, the state then proceeded to prosecute its case concerning sexual abuse involving E.Z. During closing argument, the state again argued both cases separately.

{¶ 80} The record also demonstrates that sufficient evidence was presented as to each offense without necessitating the use of evidence from one occurrence to prove the other. As detailed above, both R.C. and E.Z. provided testimony concerning the alleged acts of sexual abuse Workman committed against them, including the circumstances under which the abuse occurred. The record shows that the evidence pertaining to each victim and each offense could be easily segregated. Furthermore, there is no indication in the record how Workman would have defended the charges differently had they been tried separately. *See State v. Ashcroft*, 12th Dist. Butler No. CA2008-12-305, 2009-Ohio-5281, ¶ 25. Finally, the record demonstrates that the trial judge instructed the jury that it was required to consider the charges as separate matters. *See id.*; *Vunda*, 2014-Ohio-3449 at ¶ 73 (there is a presumption that jurors follow the instructions given by the trial court).

{¶ 81} Because of the foregoing, we find the trial court did not err in denying Workman's request for severance where the evidence concerning each offense was separate and distinct, and simple and direct. The matters for the jury were simple and revolved around witness credibility and whether Workman had engaged in the alleged sexual conduct. Workman's third assignment of error is overruled.

{¶ 82} Assignment of Error No. 6:

{¶ 83} THE CONSECUTIVE STRUCTURE OF THE TRIAL COURT'S 161 YEAR

SENTENCE IS DISPROPORTIONATE TO THE DANGER APPELLANT POSES TO THE PUBLIC.

{¶ 84} In his sixth assignment of error, Workman alleges the trial court erred by imposing a 161-year prison sentence. Though Workman concedes that the trial court made the necessary consecutive sentencing findings, he argues that the sentence was disproportionate and excessive and also not necessary to protect the public.

{¶ 85} Workman received a 10-year prison sentence on each of 15 counts of rape committed against E.Z. for violations of R.C. 2907.02(A)(1)(b), R.C. 2907.02(A)(1)(a), and R.C. 2907.02(A)(2), which were first-degree felonies. Each sentence was ordered to be served consecutively for a total of 150 years in prison. In addition, Workman was sentenced to an 11-year prison sentence for his rape conviction committed against R.C. in violation of R.C. 2907.02(A)(2). The trial court ordered that sentence be served consecutive to the 150-year prison term imposed for a total of 161 years.

{¶ 86} As noted above, Workman's conviction on Count 15 involving E.Z. is not supported by sufficient evidence and is vacated as is its corresponding sentence. However, we will review the remaining convictions, which are supported by the weight of the evidence.

{¶ 87} This court reviews felony sentences pursuant to the standard of review set forth in R.C. 2953.08(G)(2) to determine whether the imposition of those sentences is clearly and convincingly contrary to law. *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Pursuant to that statute, an appellate court may modify or vacate a sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7. A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing as set forth in R.C. 2929.11, as well as the seriousness and

recidivism factors listed in R.C. 2929.12, and sentences a defendant within the permissible statutory range. *State v. Brandenburg*, 12th Dist. Butler Nos. CA2014-10-201 and CA2014-10-202, 2016-Ohio-4918, ¶ 9.

{¶ 88} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9. First, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(C)(4). *Id.* Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id.* Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 89} "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria." *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, ¶ 113. In imposing consecutive sentences, the trial court

is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings. *Id.* Nevertheless, the record must reflect that the trial court engaged in the required sentencing analysis and made the requisite findings. *Id.* The court's findings must thereafter be incorporated into its sentencing entry. *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 10.

{¶ 90} Here, the record reflects that the trial court made the findings required by R.C. 2929.14(C)(4) when it ordered Workman's sentences be served consecutively. The trial court noted the seriousness of the charges. Workman took advantage of R.C. through a prior relationship and committed a sexual offense on the child while he was asleep. When Workman was exposed for his conduct, E.Z. came forward and disclosed a nearly decade-long pattern of repeated sexual abuse. The trial court found that Workman's conduct was more serious than normally constituting the offenses of rape and that consecutive sentences were necessary to protect the public from future crimes.

{¶ 91} The trial court later memorialized these findings within its sentencing entry. From the trial court's statements at the sentencing hearing and the language used in the sentencing entry, it is clear that the trial court complied with the dictates of R.C. 2929.14(C)(4). *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37; *State v. Sess*, 12th Dist. Butler No. CA2015-06-117, 2016-Ohio-5560, ¶ 35-38. It is also clear that the record supports the trial court's findings that the harm caused by Workman's offenses was so great or unusual that no single prison term adequately reflected the seriousness of his conduct and that consecutive sentences were necessary to punish Workman and protect the public.

{¶ 92} Workman argues that he had "led an otherwise law-abiding life" until the present charges. That argument is completely unpersuasive. The evidence shows that Workman was a violent sexual offender who engaged in a nearly decade long pattern of

abuse with a child. Workman committed the abuse and then threatened the child to prevent disclosure of the abuse. Workman was only caught when he sexually abused another child. The statement that Workman otherwise led a "law-abiding life" is stunningly rebutted by the record.

{¶ 93} Since we have vacated Workman's conviction and sentence on Count 15, we hereby reverse the trial court's judgment and remand the matter for resentencing consistent with this Opinion. In all other respects, the trial court's judgment on the remaining convictions is affirmed.

{¶ 94} Judgment affirmed in part, reversed in part, and remanded.

PIPER and M. POWELL, JJ., concur.