[Cite as *State v. Thompson*, 2023-Ohio-559.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-09-080 |
| | : | O P I N I O N |
| - vs - | | 02/27/2023 |
| | : | |
| RAYMOND E. THOMPSON III, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2021-08-1113

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

**S. POWELL, P.J.**

{¶ 1}   Appellant, Raymond E. Thompson III, appeals his conviction in the Butler County Court of Common Pleas after a jury found him guilty of one count of first-degree felony rape of a person less than 10 years of age and one count of third-degree felony gross sexual imposition of a second individual less than 13 years of age.  For the reasons outlined below, we affirm Thompson's conviction.

**Facts and Procedural History**

*The Two-Count Indictment*

{¶ 2} On September 1, 2021, the Butler County Grand Jury returned a two-count indictment against Thompson. The first count charged Thompson with first-degree felony rape of a person less than 10 years old in violation of R.C. 2907.02(A)(1)(b). This charge arose after it was alleged Thompson had forced a six-year-old girl to perform oral sex on him at a home located on Stockton Road, Fairfield, Butler County, Ohio sometime between June 13, 2003 and June 12, 2004. The second count charged Thompson with third-degree felony gross sexual imposition of a different person who was less than 13 years old in violation of 2907.05(A)(4). This charge arose after it was alleged Thompson had rubbed his erect penis on the vaginal area of an under 13-year-old girl at a home located on Lake Tahoe Court, Fairfield, Butler County, Ohio sometime between February 19, 2015 and February 18, 2019. To protect their identities, and to maintain their privacy, we will refer to these two girls as Jane and Becky.

*Thompson's Arraignment, Not Guilty Plea, and Motion to Sever*

{¶ 3} On September 9, 2021, the then 39-year-old Thompson appeared at his arraignment hearing with counsel and entered a plea of not guilty to both charges. Several months later, on April 4, 2022, Thompson filed a motion to sever the charges for purposes of his upcoming trial. To support this motion, Thompson argued that severing the charges was necessary to avoid unfairly prejudicing the jury against him because the charges were "unrelated," "from two separate incidents," and "from two separate dates." The trial court issued a decision denying Thompson's motion on May 5, 2022. In so doing, the trial court found that although it did not yet know all of the underlying facts given rise to the charges levied against Thompson, it was nevertheless aware of a number of key differences. These differences included, but were not limited to, the identity and age of the two victims, the

- 2 -

specific charge related to each of the two victims, and the "physical location" where the two crimes occurred. The trial court therefore concluded that the state had negated Thompson's claim of unfair prejudice by satisfying the "joinder test."[1]

*The Two-Day Jury Trial*

{¶ 4} The trial court held a two-day jury trial on July 20 and 21, 2022. During trial, the jury heard testimony from a total of six witnesses. This included testimony from both Jane and Becky. This also included testimony from Cecelia Freihofer, a social worker and forensic interviewer employed with the Mayerson Center at Cincinnati Children's Hospital, who had conducted forensic interviews on both Jane and Becky regarding their interactions with Thompson and the sexual abuse that Thompson had perpetrated against them. There is no dispute that the trial court designated Freihofer as an expert witness in forensic interviews of child victims of physical and sexual abuse at trial. There is also no dispute that Thompson did not object to this designation. The three other witnesses who testified at trial were a detective with the Fairfield Police Department, Jane's mother, and Becky's older brother. Thompson did not have any witnesses testify in his defense. The following is a summary of the pertinent testimony and evidence presented by the state at trial.

*The Rape of Jane*

{¶ 5} Jane testified that one night in 2003 or early 2004 when she was six years old that Thompson had told her his penis was a "lollipop" and "had [her] put [her] mouth on his penis." Jane testified that once Thompson had put his penis into her mouth that Thompson then instructed her to "[j]ust [do] what you do with lollipops." Jane testified that she did just as Thompson had instructed and that she then tasted something "salty" and knew that what she had in her mouth "wasn't a lollipop." Jane testified that this occurred while Thompson

---

1. The "joinder test" is one of two methods the state may utilize to rebut a defendant's claim of prejudicial joinder. We will discuss the "joinder test" more fully when considering Thompson's first assignment of error.

was sitting on the couch with his pants down in the dark living room of her maternal grandparents' home located on Stockton Road in Fairfield, Butler County, Ohio. Jane testified that she eventually stopped when she saw the headlights from her mother's car pull into her grandparents' driveway. Jane testified that Thompson then "wrapped it up" and told her to act like she was sleeping. Jane testified that she then laid down on her grandparents' living room floor and pretended to be asleep.

{¶ 6} Jane, who at the time of trial was 25 years old, later testified and explained that she did not initially know that Thompson had put his penis into her mouth or that Thompson had forced her to perform fellatio on him.[2] Jane instead testified that she just knew whatever Thompson had put into her mouth was not "sweet" and that it "didn't taste like a lollipop." Jane also testified that she later asked Thompson why he had put his penis in her mouth and had her perform fellatio on him. Jane testified that Thompson responded that she had "wanted to know" what his penis was like.

{¶ 7} Jane testified that years later, in 2013, she disclosed the rape to her therapist. Jane testified, however, that she did not want to disclose the identity of her rapist. Jane, who at the time of this initial disclosure was 16 years old, testified that this revelation "started a whole big thing" where people "were brought to [her] house to talk to [her] about it." Jane testified that she was also sent to Cincinnati Children's Hospital to talk about the rape with a different "therapist" other than her own.[3] Jane testified it was at this time when she finally "cracked" and acknowledged that it was Thompson who had raped her. Jane testified that this disclosure caused her to scream and cry "for like 30 minutes" because she did not want anybody to know that Thompson was her rapist because he was supposed to be her

2. This court has previously defined a "fellatio" as when one's mouth or lips come into contact with the penis. *State v. Speakman*, 12th Dist. Fayette No. CA2010-06-013, 2011-Ohio-3430, ¶ 12.

3. The "therapist" with whom Jane spoke at Cincinnati Children's Hospital in 2013 was Freihofer. The record indicates that Freihofer has worked at Cincinnati Children's Hospital for over 16 years first starting in 2006.

- 4 -

"protector" and a "father figure."

**{¶ 8}** Jane testified that once the identity of her rapist was revealed that she text messaged Thompson to give him a "heads-up" to let him know what was going on. Jane testified that she did this because she was trying to "protect" Thompson from getting into trouble for what he had done to her as a child. Photographs of the text message conversation between Jane and Thompson were later admitted into evidence without objection. The following is a reproduction of the relevant portions of that text message conversation:[4]

> **Jane**: Hey.
>
> **Thompson**: Hello.
>
> **Jane**: I've tried for weeks to not say anything or let anything slip about you. I told my therapist about what happened when I was little, and I refused to tell anyone who, but today [my] mom talked to a detective and they found out who it was. Mom just told me they know who it is and you know who it is. I have tried so hard to hide it because you mean more to me than anyone in the world and I wanted to protect you, but I don't know what will happen and I keep crying because I didn't want anything to happen to you. I love you so much and I am so, so sorry.
>
> **Thompson**: Slip, huh?
>
> **Jane**: I've been pressured by two detectives and a therapist other than my own. I would do anything for you. I never said your name or anything about that.
>
> **Thompson**: About me? Detectives say anything to make you think they know, your mother knows, or that I know so you will say something. But I don't know nothing.
>
> **Jane**: Yes, you do.
>
> **Thompson**: Your mother is trying to help you. I talked to your mother. She didn't tell me anything. You need someone to talk to call me. Wait, what are you talking about mentioning my

---

4. We note that, for purposes of clarity, this court has corrected some typos and added proper punctuation where necessary.

name? Huh? Call me, don't text.[5]

{¶ 9} Jane also testified that, in 2013, when the identity of her rapist was originally disclosed, she did not want to "take it to court," did not want Thompson to be taken to jail, and did not "want any of it." Jane testified that this was because, although she was afraid of Thompson given what he had previously done to her as a child, she had known Thompson her entire life, loved him, and had looked up to him. Despite these feelings, Jane testified that she ultimately decided to come forward and cooperate in the investigation into Thompson's sexual abuse after learning Becky had also "announced that something had happened to her" a few years earlier. Jane testified that Becky's coming forward changed her mind and persuaded her to do "something that [she] should" have done years earlier despite her being "at peace with [her] life before this" and it going against some of her family's wishes.

*The Gross Sexual Imposition of Becky*

{¶ 10} Becky, then a 16-year-old junior in high school, testified that a few years earlier when she somewhere in the range of nine, 10, or 11 years old that she decided to put makeup on Thompson, who was at that time one of her adult housemates. Becky testified that she wanted to do this because she "was a little girl" and that was "something [she] liked to do" at the time. To do this, Becky testified that she took her makeup into Thompson's bedroom located in a home on Lake Tahoe Court in Fairfield, Butler County, Ohio where she found Thompson lying alone in his bed. Becky testified that upon finding Thompson in his room that Thompson "got [her] on top of him" and that "everything [then] got weird." Becky testified that this included Thompson moving her "around on his lap" while she was putting makeup on his face. Becky testified that this also included

---

5. This portion of the conversation was spread out over a series of four separate text messages.

Thompson's "private area get[ting] hard," a hardness that Becky testified she could feel "on [her] own body" and around her "lower area" and vagina.

{¶ 11} Becky testified and further explained that while she was putting makeup on Thompson's face that he put his hands on her waist and hips and "kind of" moved her body "a little bit back and forth," "push[ing] her hips" back and forth while he "got hard." Becky also testified that she could feel Thompson's penis "moving, like the feeling of it like getting hard" underneath their clothes. Becky testified that Thompson did not ask her to do anything during this time, but that Thompson was nevertheless "moving" her back and forth on his increasingly erect penis. Becky testified that she did not initially tell anybody about what Thompson had done to her until several years later, in 2020, when she told her older brother about the incident. The record indicates that Becky was at that time very upset, scared, and crying. Becky testified that she had waited to say anything about what Thompson had done to her because she "didn't feel safe" around Thompson. Becky also testified, without objection, that she believed Thompson was a "pervert" because Thompson looked at other people's "asses" and "butts" all the time.

*The Final Jury Instructions, the Finding of Guilt, and Sentence*

{¶ 12} After both parties rested, and following closing arguments, the trial court provided its final instructions to the jury. This included the trial court instructing the jury that:

> [t]he charges set forth in each count of the indictment constitutes separate and distinct matters. You must consider each count and the evidence applicable to each separately. And you must state your verdict as to each count uninfluenced by your verdict as to any other count.

The trial court then excused the jury from the courtroom to begin its deliberations. Shortly thereafter, the jury returned to the courtroom with a verdict finding Thompson guilty as charged.

{¶ 13} On August 30, 2022, the trial court held a sentencing hearing. During this

hearing, the trial court sentenced Thompson to serve an indefinite sentence of a mandatory minimum 15-years-to-life in prison for the rape of Jane, with a concurrent 24-month prison term for the gross sexual imposition of Becky, less 100 days of jail-time credit. The trial court also ordered Thompson to pay court costs and classified Thompson as a sexually oriented offender for the rape of Jane and as a Tier II sex offender for the gross sexual imposition of Becky. The trial court further notified Thompson that he would be subject to parole for the rape of Jane if he was ever released from prison and to a mandatory five-year postrelease control term for the gross sexual imposition of Becky.

### Thompson's Appeal and Four Assignments of Error

{¶ 14} Thompson now appeals his conviction, raising four assignments of error for review. For ease of discussion, we will address Thompson's fourth assignment of error out of order.

{¶ 15} Assignment of Error No. 4:

{¶ 16} THE TRIAL COURT ERRED WHEN IT FAILED TO ADVISE THOMPSON OF HIS RIGHTS PURSUANT TO CRIM.R. 5 AT ARRAIGNMENT.

{¶ 17} In his fourth assignment of error, Thompson argues the trial court erred by failing to advise him of his rights set forth within Crim.R. 5(A) at his arraignment hearing. However, as this court has previously held, when the defendant is represented by counsel, pleads not guilty, and proceeds to trial without objection, the defendant waives the Crim.R. 5(A) requirements.[6] *Hamilton v. Brown*, 1 Ohio App.3d 165, 168 (12th Dist.1981). "Other Ohio appellate courts have reached the same conclusion." *State v. Hsu*, 1st Dist. Hamilton No. C-150635, 2016-Ohio-4549, ¶ 47, citing *State v. Eschrich*, 6th Dist. Ottawa No. OT-06-045, 2008-Ohio-2984, ¶ 21; *State v. Nickerson*, 8th Dist. Cuyahoga No. 70910, 1997 Ohio

---

6. We note that the same does not hold true where the defendant appears pro se. *Middletown v. McIntosh*, 12th Dist. Butler No. CA2006-07-174, 2007-Ohio-3348, ¶ 15.

App. LEXIS 2554 (June 12, 1997); *Portsmouth v. Ritch*, 4th Dist. Scioto No. 97CA2491, 1998 Ohio App. LEXIS 2193 (May 11, 1998); and *State v. Smith*, 9th Dist. Lorain No. 95CA006325, 1996 Ohio App. LEXIS 2652 (June 26, 1996). Therefore, because Thompson appeared at his arraignment represented by counsel, plead not guilty, and proceeded to trial without objection, Thompson necessarily waived the Crim.R. 5(A) requirements in this case. Accordingly, finding no merit to Thompson's argument raised herein, Thompson's fourth assignment of error lacks merit and is overruled.

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT OVERRULED THOMPSON'S MOTION FOR SEPARATE TRIALS.

{¶ 20} In his first assignment of error, Thompson argues the trial court committed plain error by denying his motion to sever the rape charge related to Jane from the charge of gross sexual imposition related to Becky. We disagree.

{¶ 21} Pursuant to Crim.R. 8(A), two or more offenses may be charged in a single indictment if the offenses charged are: (1) of the same or similar character; (2) based on the same act or transaction; (3) based on two or more acts or transactions connected together or constituting parts of a common scheme or plan; or (4) part of a course of criminal conduct. The law favors joining multiple offenses in a single trial. *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 78, citing *State v. Lott*, 51 Ohio St.3d 160, 163 (1990). The joinder of offenses is, in fact, to be liberally permitted in circumstances where the requirements set forth in Crim.R. 8(A) are satisfied. *State v. Wilson*, 12th Dist. Clermont No. CA2001-09-072, 2002-Ohio-4709, ¶ 49. "Nonetheless, pursuant to Crim.R. 14, if it appears that the defendant would be prejudiced by joinder of the charged offenses, the trial court may grant a severance." *State v. Morsie*, 12th Dist. Warren No. CA2012-07-064, 2014-Ohio-172, ¶ 28, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 95.

{¶ 22} "The defendant bears the burden of proving prejudicial joinder." *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 31. Once the defendant satisfies his or her initial burden, the state may then rebut the defendant's claim of prejudicial joinder by utilizing one of two methods. *State v. Ashcraft*, 12th Dist. No. Butler CA2008-12-305, 2009-Ohio-5281, ¶ 16. The first method, which is termed the "other acts test," requires the state to demonstrate that it could have introduced evidence of the joined offenses at separate trials pursuant to the "other-acts" provision found in Evid.R. 404(B). *State v. Hensley*, 12th Dist. Warren No. CA2009-11-156, 2010-Ohio-3822, ¶ 40. The second method, which is termed the "joinder test," requires the state to demonstrate that the evidence of each crime joined at trial is "simple and direct." *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 38. "A showing by the state that the evidence relating to each crime is simple and direct negates any claims of prejudice and renders joinder proper." *State v. Bice*, 12th Dist. Clermont No. CA2008-10-098, 2009-Ohio-4672, ¶ 53. This holds true "'regardless of the admissibility of evidence of other crimes under Evid.R. 404(B).'" *State v. Hall*, 12th Dist. Warren No. CA2020-12-087, 2022-Ohio-1147, ¶ 217, quoting *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991).

{¶ 23} The decision to grant or deny a motion to sever is a matter left to the trial court's discretion. *State v. Grevious*, 12th Dist. Butler No. CA2018-05-093, 2019-Ohio-1932, ¶ 25. Given the discretion afforded to the trial court, this court will generally review a trial court's decision to grant or deny a motion to sever under an abuse of discretion standard. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 74. However, where a defendant files a motion to sever but then fails to renew the motion at the close of either the state's case or presentation of all evidence, such as the case here, the defendant waives all but plain error on appeal. *Moshos*, 2010-Ohio-735 at ¶ 77, citing *State v. Cobb*, 12th Dist. Butler No. CA2007-06-153,

- 10 -

2008-Ohio-5210, ¶ 61, fn. 6; and *State v. Wright*, 12th Dist. Warren No. CA2008-03-039, 2008-Ohio-6765, ¶ 10. "Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings." *State v. Buell*, 12th Dist. Fayette No. CA2021-12-026, 2022-Ohio-3102, ¶ 16, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 24} Thompson argues it was plain error for the trial court to deny his motion to sever because allowing the state to present evidence of both offenses at the same trial created a "corroborative, and inflammatory, impression in the mind of the jury that if he committed one offense he committed the other." Ohio appellate courts, however, "have upheld joinder in sex abuse cases involving multiple child victims where the evidence as to each offense is separate, uncomplicated and sufficient to support a conviction without necessitating the use of evidence relating to other offenses." *State v. Ashcraft*, 12th Dist. Butler No. CA2008-12-305, 2009-Ohio-5281, ¶ 19. Such is the case here as the rape and gross sexual imposition charges involved two separate victims, took place at two separate times, and at two separate and distinct locations within Fairfield, Butler County, Ohio. Thompson admitted as much as part of his own motion to sever, specifically acknowledging that the charges were "unrelated," "from two separate incidents," and "from two separate dates."

{¶ 25} The evidence used by the state to establish the rape and gross sexual imposition was also presented to the jury by predominantly victim specific witnesses who testified to matters that were specific to each individual victim. The only exception to this was the state's expert witness, Cecelia Freihofer, a social worker and forensic interviewer employed with the Mayerson Center at Cincinnati Children's Hospital. Freihofer, however, was called to the stand twice, once regarding Jane and once regarding Becky, thereby limiting, if not outright negating, any potential confusion the jury may have had regarding

her testimony. The trial court further instructed the jury and specifically told the jury as part of its final jury instructions that:

> [t]he charges set forth in each count of the indictment constitutes separate and distinct matters. You must consider each count and the evidence applicable to each separately. And you must state your verdict as to each count uninfluenced by your verdict as to any other count.

{¶ 26} "It is presumed that the jury followed the [trial] court's instructions." *State v. Whitaker*, Slip Opinion No. 2022-Ohio-2840, ¶ 161, quoting *State v. Loza*, 71 Ohio St.3d 61, 79 (1994). This presumption applies to reviewing courts on appeal. *See State v. Miller*, 12th Dist. Preble No. CA2019-11-010, 2021-Ohio-162, ¶ 50. This holds true "unless it is demonstrated otherwise." *State v. Myers*, 12th Dist. Warren No. CA2019-07-074, 2021-Ohio-631, ¶ 79. Thompson has not introduced any evidence to the contrary. Therefore, because the evidence as to the rape of Jane and the gross sexual imposition of Becky was separate, uncomplicated, and sufficient to support a conviction without necessitating the use of evidence relating to the other offense, the trial court did not err, plain or otherwise, by denying Thompson's motion to sever the charge accusing him of raping Jane from the charge accusing him of gross sexual imposition of Becky. Accordingly, finding no merit to any of the arguments raised by Thompson herein, Thompson's first assignment of error lacks merit and is overruled.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ERRED WHEN IT ALLOWED AN EXPERT WITNESS TO TESTIFY AS TO HER OPINION ON MATTERS SHE WAS NOT QUALIFIED TO OPINE ON.

{¶ 29} In his second assignment of error, Thompson argues the trial court committed plain error by permitting Freihofer to testify and "diagnose" the impact that being a child victim of sexual abuse would have on that child's mental health. Thompson argues the

admission of this testimony violated both Evid.R. 702 and 703 because it required Freihofer to opine on matters that stretched far beyond her designated expertise in childhood sexual abuse victims and forensic interviewing of alleged victims of childhood sexual abuse.[7] However, despite Thompson's claim, Freihofer did not offer or provide a diagnosis of any alleged child sex abuse victim. This includes the two victims in this case, Jane and Becky.

{¶ 30} Rather, when considering the challenged testimony at issue, Freihofer merely testified that being a six-year-old child victim of sexual abuse would likely affect that child's mental health. Freihofer also testified that knowing the age of the alleged child sex abuse victim, as well as the recency and redundancy of the alleged sexual abuse, was important for a forensic interviewer to know when determining the appropriate treatment, if any, that should be offered to the child. Such testimony falls well within Freihofer's designated expertise given her specialized knowledge, skill, experience, training, and education regarding child victims of sexual abuse and forensic interviewing of alleged victims of childhood sexual abuse. *See State v. Casey*, 12th Dist. Clinton Nos. CA2016-01-001 and CA2016-06-013, 2017-Ohio-790, ¶ 12 (finding Freihofer's testimony regarding her forensic interview with the child sexual abuse victim and the effects that sexual abuse may have on a child victim during such interviews was properly admitted expert testimony); *see also State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 51-53, 61 (finding Freihofer was properly designated as an expert witness and that Freihofer acted in accordance with her expertise when assessing, reporting, and testifying to the alleged child sexual abuse victim's statements). Therefore, because the trial court did not err, let alone commit plain error, by permitting Freihofer to testify in the manner that she did, Thompson's second assignment of error also lacks merit and is overruled.

---

7. The record fails to disclose an objection to Friehofer's "diagnosis" testimony. Accordingly, we examine this assignment, like the previous one, under the plain error standard.

{¶ 31} Assignment of Error No. 3:

{¶ 32} THE CONVICTION FOR [GROSS SEXUAL IMPOSITION] IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

{¶ 33} In his third assignment of error, Thompson argues his conviction for the gross sexual imposition of Becky was not supported by sufficient evidence. We disagree.

{¶ 34} "A claim challenging the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 12th Dist. Clermont No. CA2021-05-019, 2022-Ohio-244, ¶ 39, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. "If the state fails to present sufficient evidence on every element of an offense, then convicting a defendant for that offense violates the defendant's right to due process of law." *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 13.

{¶ 35} Thompson was convicted of one count of third-degree felony gross sexual imposition in violation of R.C. 2907.05(A)(4). That statute prohibits any person from having "sexual contact" with another person who is less than 13 years of age. R.C. 2907.01(B) defines the term "sexual contact" to mean "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." "[T]here is no requirement that there be direct testimony regarding sexual arousal or gratification."

*State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-2664, ¶ 13. Rather, "[w]hether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 33. Therefore, "[i]f the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 78.

{¶ 36} Thompson argues the state did not provide sufficient evidence that his touching of Becky was for the purpose of his "sexual arousal or gratification" as defined by R.C. 2907.01(B). However, when viewing the evidence in a light most favorable to the state, the record indicates that Thompson, while lying in his bed, had Becky get into his bed with him where he then positioned Becky sitting astride his lap. The record indicates that Thompson then placed his hands on Becky's waist and hips and moved Becky's vaginal area back and forth on his increasingly erect penis while Becky continued to sit on his lap putting makeup on his face. R.C. 2907.01(B) contemplates the phrase "sexual arousal or gratification" to be any touching of the described areas that a reasonable person would perceive as sexually stimulating. *State v. McCoy*, 12th Dist. Butler No. CA2015-05-095, 2016-Ohio-1577, ¶ 14. Although somewhat circular in logic, a reasonable person would certainly perceive the act of Thompson rubbing his increasingly erect penis on Becky's vaginal area as sexually stimulating for him given the simple fact that his penis was becoming increasingly erect. This holds true even though Thompson attempted to provide

this court with a nonsexual reason for his conduct.[8]  *State v. Johnson*, 12th Dist. Warren No. CA2021-09-085, 2022-Ohio-2097, ¶ 30.  Therefore, finding no merit to any of the arguments raised by Thompson herein, Thompson's third assignment of error is likewise without merit and is overruled.

**Conclusion**

{¶ 37} For the reasons outlined above, and finding no merit to any of the four assignments of error raised herein, Thompson's conviction for one count of first-degree felony rape of a person less than 10 years of age, and one count of third-degree felony gross sexual imposition of a different person less than 13 years of age, is affirmed.

{¶ 38}  Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.

---

8. Thompson argues in his appellate brief that him getting an erection while Becky sat on his lap was "unintended, unwanted, and [an] involuntary physical reaction."  Thompson also argues his moving Becky's vaginal area back and forth on his increasingly erect penis was just him "awkwardly trying to remove her from his lap."  Given its verdict, the jury clearly rejected Thompson's attempts to explain away his conduct, and so do we.